Haynes, J.
This action, above entitled, and N. G. Secor against Chas. W. Barrett, were heard together. Mrs, Secor is a sister of Mr. Walbridge, and he transacted the whole business that was done in regard to the matters in controversy here, and the cases were submitted to us the same as if they were one case.
The actions were submitted to us on questions of the marshalling of liens, The facts briefly are, that Walbridge was the owner of some property in the city of Toledo which was subdivided into six lots. He sold the same to Barrett, at a certain price, no part of the purchase price be *524 ing paid down, but it was agreed that the price should be paid as Barrett should build upon the property, he stating that be expected to build upon, the property soon, The first payment was to be made when the houses should be completed up to a certain point; the second, when the roofs were on the houses, and the balance when the houses were completed. Barrett in fact went into possession of the property, immediately and commenced to build and to put six buildings upon the property, one on each lot. It was further agreed between Walbridge and Barrett that if Barrett should want to mortgage the property for the purpose of raising money, Walbridge would convey the property to Barrett by deed. Soon after Barrett went into possession of the property and commenced to build. He desired to mortgage the property, and thereupon Walbridge executed deeds and delivered them to Mr, Korick, through whom Mr. Barrett was negotiating loans; the loans were negotiated, the mortgages made and the deeds and mortgages were placed on record at the same time. At the time that the money was paid in on the mortgages, quite a sum of the money was paid over by Rorick to Walbridge,and Walbridge paid over to Barrett the principal part, or perhaps all of the money, and Barrett paid off a few of the laboring men, put the balance of the money in his pocket, left the country •and has never been heard of since. The property,I believe, had been sold, or a portion of it, and actions have been brought to enforce liens upon the property, and thus the •questions arise which we have here.
Many of the questions have been argued to us with a .great deal of earnestness and ability, and we have endeavored to consider them all, but I do not undertake to go through and discuss all the questions which have arisen or may arise in the minds or judgment of counsel, We think the well •established principles of law as laid down by the supreme •court of Ohio, are sufficient to guide us to a determination •of the rights of the parties in this case. The decree in this •case will be substantially this:
1. The costs and taxes and assessments, if there are any mentioned in the petition which are a lien upon the property and which are payable according to the statute.
2. The amount of the vendor’s lien will be ascertained -and will be allowed to the mortgagees.
*525 3. The liens of mechanics and material men and contractors will be paid.
4. The balance, if any remains, to the mortgagees.
In Mutual Building & Loan Company v. Gashe, 56 Ohio St., 273, 295, the principle is laid down by the ■supreme court which we follow here. That was a case which went from Lucas county. We had taken a certain course in the case, and in respect to this particular matter the court said we were in error, and they reversed •us, and now we will follow the supreme court. The principle laid down there is, that a vendor’s lien, unpaid, passes to the mortgagee, and he is entitled to it, that is, he is entitled to the amount of the vendor’s lien upon his mortgage to the exclusion of the lienholders under the mechanic’s lien law. That is the matter, in brief. And, therefore, after paying the costs of the suit, we allow the amount of the ■vendor’s lien in this case to pass to the mortgagees, and give them the benefit of it. But the mortgagees having taken their mortgages subsequent to the commencement of the mechanics’ liens, the mechanics’ liens would otherwise be ■prior to the mortgages; so that after the amount of the vendor’s lien is awarded to the mortgagees, the holders of the •liens under the mechanic’s lien law will come in for the ■balance that remains due upon their contracts, and when •the amount of the liens-is paid off, if there is anything left, the mortgagees may-have it, and by that time, as near as I can understand, the money will be exhausted.
Campbell v. Sidwell, 61 Ohio St., 179 609, which has been cited, we think, has no application to this case in whatever. We think the whole case is solved substance by the position that I have mentioned. I will say, however,that there was one question raised and argued by counsel in which it was claimed that inasmuch as Walbridge had agreed with the mortgagees (and I should have •stated that he did so agree), that he would postpone his ■vendor’s lien to their mortgages, that that waiver should extend to the whole of the mechanics’ liens, Mahngren v. Phinney, 50 Minnesota, 457, was cited to us; but ■counsel who have cited it have overlooked something in that case, because, in fact, that decision is the very reverse of what is claimed for it. Prior to that, there had *526 been a decision holding the doctrine claimed by counsel, but that decision was overruled by Mahngren v. Phinney, 50 Minn., 457, and, at any rate, we hold that that rule has np application, and we find no authority for so holding.
There was in this case a question raised which we should probably notice,and that is, that at the time the money was paid over by the mortgagees to Mr. Walbridge, under an arrangement between them, Mr. Walbridge received from Barrett some $2000 or, $3000 of that money upon another contract that he had for the sale of property not upon this contract nor upon this land; and we had considerable discussion whether that could be reached in any way in this case; but we are unable to see how it can be reached here, because, to take that out to apply upon the vendor’s lien would be simply to take it out of the mortgagees, which would be unjust and would not be right, because all these matters transpired after the mortgages had been executed and the mortgagees had their lawful lien upon the premises. Whatever questions there may be between the mortgagees and Walbridge in regard to that matter, they do not arise here, and we will not pass upon them. It has been suggested that the amount of money placed in the hands of Walbridge ought to be held for the payment of these liens, but we know of no principle of law that would require us to hold that Walbridge should be liable to the mechanics’ lien-holders for the amount of that money received by him. He had not undertaken with them at any time or in any manner to see that whatever money was paid on the mortgages, or paid by Barrett, or received by Barrett, or from any other source whatever, should be applied in payment of the amount of the mechanics’ liens, and we know of no legal obligation on his part to do so, unless he had volunteered to do it. He paid this money over to Barrett. It was a serious mistake, there is no doubt about it; but we think it is very clear that he honestly expected that Barrett would receive it and use it, and would go forward in the business which he had undertaken and would carry out his contracts; we think that in all that he acted honestly, even if he erred in judgment. It seems that when Barrett got the money in his pocket, the-temptation was too strong and the money led him away and he forgot to return. But we are unable *527 to see how, under any legal principles, that matter should be charged in any manner to Mr, Walbridge. Walbridge was in no wise bound to receive this money from the mortgagees, or to hold it. It seems that Rorick did pay it over to Walbridge, and it was passed through his hands,but that was a matter between him and Walbridge, So that, after a very full and lengthy discussion of this matter, we came to the conclusion we have in the premises, and are. very clear in our minds that it is in accordance with the principles of law already established by the supreme court, and which we are bound to follow, and the decree will be as I have stated.
H. C. Rorich, for Mortgagees.
King & Tracy, for the Plaintiffs,
Ray & Cordell-, McDonald-, Reno-, Southard, & Southard and others, for the Defendants.
In regard to Casper Sacks and his claim, Mr, Sacks was sworn and gave testimony to sustain it. It was said by counsel that they would look into the matter and perhaps offer some further testimony, but we have never heard anything in regard to it, and so the claim of Mr. Sacks will be as stated in his answer,